UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NIRMIN ELBA,

        **Plaintiff,**

    **v.**

MAC'S CONVENIENCE STORES,
LLC, D/B/A CIRCLE K,

       **Defendant.**

**Case No. 2:23-cv-4108
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Mac's Convenience Stores, LLC, d/b/a Circle K. (ECF No. 23.) Plaintiff Nirmin Elba opposes the Motion (ECF No. 36) and Circle K replied (ECF No. 37). For the reasons stated in this Opinion and Order, the Motion for Summary Judgment (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This case arises from an alleged pay disparity between Ms. Elba and her male colleagues. She asserts that Circle K has paid her an unequal wage throughout her entire career with the company. (*See* ECF No. 4.)

### I.    FACTUAL BACKGROUND

Ms. Elba's career with Mac's Convenience Stores, doing business as Circle K, when it acquired her then-employer, Dairy Mart. (Elba Dep., ECF No. 24, PageID 277–79, 15:08–20.) She started as a Market Manager in the Great Lakes business unit. (*Id.* 20:04–24.) As Market Manager, she supervised the store managers, and oversaw the operations, staffing, inventory, and human resources of the stores in her market. (*Id.* 22:03–16.)

**A. Ms. Elba served as Category Manager from 2010 to 2015.**

In June 2010, Ms. Elba received a promotion to Category Manager. (*Id.* 21:11–23.) As Category Manager, she managed all dispensed beverages sold at the 500 convenience stores in the Great Lakes business unit. (*Id.* 25:15–26:22.) Along with her promotion, she received a salary increase from $52,762.06 to $62,799.88. (*Id.* 21:24–22:02; *see also* ECF No. 31-2, PageID 423.)

Ms. Elba introduced payroll records that show she was paid less than two male Category Managers. (*See* ECF No 36, PageID 639–40.) The table below, created by the Court from information in the record, summarizes the wage differentials between her, Steve Guzman, and Lawrence Vertal:

|        | Nirmin Elba | Lawrence Vertal | Steve Guzman |
|--------|-------------|-----------------|--------------|
| **2010** | $62,799.88  | $77,400.96      | $86,041.54   |
| **2011** | $65,000.00  | $79,916.46      |              |
| **2012** | $67,275.00  | $82,513.86      |              |
| **2013** | $69,158.70  | $84,989.32      |              |
| **2014** | $71,060.60  | $87,114.04      |              |
| **2015** | $73,014.76  |                 |              |

(ECF No. 32-6, PageID 583 (Guzman), 587 (Vertal); ECF No. 31-2, PageID 423–24 (Elba).) Mr. Guzman was promoted to an operations role in 2011, and Mr. Vertal was promoted in 2015. (*Id.*) By the end of her time as Category Manager in 2015 her salary was $73,014.76. (Elba Dep., ECF No. 24, PageID 280, 27:02–04.)

**B. Ms. Elba was promoted to Regional Director of Operations in 2015.**

In November 2015, she took on her current role as Regional Director of Operations ("RDO") for Region 3 of the Great Lakes business unit. (*Id.* PageID 282–83, 34:03–24.) As an RDO, Ms. Elba is responsible for the stores, and the Market Managers, in her region, which includes parts of Ohio, West Virginia, Pennsylvania, and Maryland. (*Id.* 37:17–38:20; 40:13–22.)

When she was offered the RDO position, Ms. Elba says she hesitated before accepting the promotion because the salary—$83,000—was lower than she anticipated. (*Id.* 35:01–04; 36:02–

09.) Despite the salary, she decided the promotion would help build her resume, and so she accepted the new role. (*Id.* 37:03–09.) After taking the promotion, she advocated for a salary increase. She discussed her desired salary with Bill Bartolomeo, the Vice President of the Great Lakes region, who offered her the RDO promotion. (*Id.* 36:07–37:10.) And she raised the issue again with Matt Dolan, when he took over the role of Vice President in 2018. (*Id.* PageID 285, 49:06–14.) She recalls that during her first discussion with Mr. Dolan, he told her "I am working on closing the gap because I know there is a disparity in the pay." (*Id.* PageID 286, 53:09–17.) She also discussed her pay with Brian Ridgeway who was the director of Human Resources for the Great Lakes business unit. (*Id.* PageID 289, 63:04–64:11.)

According to Mr. Dolan, the pay range for RDOs is between $80,000 to $160,000. (Dolan Dep., ECF No. 25, PageID 373, 82:03–09; 92:10–93:01.) Within that range, the salary depends on the employee's level of experience and annual performance evaluation. (*Id.* 93:02–10.) Ms. Elba received an annual performance evaluation and a corresponding merit pay increase each year. (*See* Elba Dep., ECF No. 24, PageID 290–97; *see also* ECF Nos. 31-2–31-19 (performance evaluations).) Her salary increased from $83,000 in 2015 to $129,083.63 in 2023. (ECF No. 31-2, PageID 423–24.) Mr. Dolan states that Ms. Elba was one of the highest paid RDOs in her business unit. (ECF No. 36, PageID 142.)

The records suggests that several male RDOs were paid more than Ms. Elba. Those employees include Scott Morris, Andrew Daggett, Steve Guzman, James Hansen, and Derek

Cahill. The table below, created by the Court from information in the record, compares Ms. Elba's salary with the salaries of the male comparator RDOs:

|  | Nirmin Elba | Scott Morris | Andrew Daggett | James Hansen | Steve Guzman | Derek Cahill |
|---|---|---|---|---|---|---|
| **2023** | $129,083.63 | $152,597.51 |  | $135,053.91 |  |  |
| **2022** | $124,417.96 | $146,376.51 | $158,816.33 | $131,120.30 |  |  |
| **2021** | $119,632.65 | $140,746.64 | $154,190.61 | $126,993.03 | $123,013.89 |  |
| **2020** | $106,104.34 | $136,979.70 | $151,167.26 | $124,137.86 | $120,248.18 |  |
| **2019** | $100,749.50 | $133,900.00 | $148,203.20 | $121,346.88 | $117,544.65 |  |
| **2018** | $95,951.90 | $130,000.00 | $143,886.60 | $117,812.50 | $114,121.02 | $98,969.78 |
| **2017** | $87,627.22 |  | $140,035.74 | $114,381.02 | $111,337.46 | $98,969.78 |
| **2016** | $85,075.06 |  |  | $110,513.00 | $107,937.44 | $95,901.00 |
| **2015** | $83,000.00 |  |  | $107,555.24 | $104,844.48 |  |

(*See* ECF No. 31-2, PageID 423–24 (Elba); ECF No. 32-8, PageID 597–98 (Morris), ECF No. 32-8, PageID 603 (Daggett); ECF No. 32-6, PageID 582–83 (Guzman); ECF No. 32-6, PageID 592–93 (Hansen); ECF No. 32-6, PageID 584–85 (Cahill).)

Ms. Elba, Mr. Morris, Mr. Daggett, and Mr. Cahill are all RDOs in the Great Lakes business unit.[1] Mr. Guzman, however, started his career with the company in California before transferring into the Great Lakes business unit in 2007. (Macuch, Decl., ECF No. 37-1, ¶ 4.) Since 2007, his pay has "increased according to individual merit and performance" the same way Ms. Elba's has. (*Id.*) But Mr. Hansen is an RDO in the Midwest business unit—a different business unit then Ms. Elba, and his salary is thus set by different individuals. (*Id.* ¶ 3.)

### C. Circle K's explanation for the alleged wage differential.

According to Circle K, any difference in pay between the male and female RDOs reflects a difference in performance, not sex. (*See* Dolan Dep., ECF No. 25.) Scott Morris and Andrew Daggett are the two relevant comparator RDOs who were paid more than Ms. Elba, says Circle K. (*See* ECF No. 37, PageID 655–58 (asserting Mr. Hansen and Mr. Guzman are not relevant

---

[1] The parties do not address the business unit in which Mr. Cahill served as an RDO, but the record suggests that he served as an RDO in the Great Lakes business unit from 2016 until 2018, when he was terminated. (*See* ECF No. 32-6, PageID 584–85.)

comparators).) Mr. Dolan testified that the difference in the salaries of these two men, and Ms. Elba, reflected a difference in performance, not gender. (*See* Dolan Dep., ECF No. 25.) He expounded that Mr. Morris is "one of the best in the business" (*id.* 91:15–16), and Mr. Daggett produced "top notch operational results" (*id.* 92:05–06). Both men, according to Mr. Dolan, excelled at developing talent within the organization and produced multiple people for next level promotion. (*Id.* 91:09–92:14.) The Court does not have Mr. Daggett or Mr. Morris's performance evaluations to compare the feedback they received, to the feedback Ms. Elba received. And Ms. Elba asserts, though without support, that Mr. Morris had less experience than she did. (ECF No. 36, PageID 633.)

Mr. Dolan testified to participating in at least seven of Ms. Elba's annual performance evaluations. (*Id.* 46:01–16.) The feedback in Ms. Elba's performance evaluations improved over her tenure as RDO. In 2019, she received a calculated rating of 3.33 and her performance was described as "good." (ECF No. 31-15, PageID 483.) Although Circle K no longer uses the same rating system, in 2022, her feedback was significantly more positive. Mr. Dolan described her as "a very strong manager of her team." (ECF No. 31-17, PageID 489.) He praised her for "driv[ing] engagement by using existing processes to maximize outcomes" and said, "she should be most proud of how she accomplished a massive improvement in engagement across the board and in her direct reports." (*Id.*) Although her performance improved from "average" in 2019 to "slightly above average"[2] in 2022, Mr. Dolan explained she struggled to develop talent within the organization. (Dolan Dep., ECF No. 25, 92:08–14.)

---

[2] Ms. Elba disputes the characterization of her performance as average. (ECF No. 36, PageID 638.) In an affidavit attached to her Memorandum in Opposition she maintains that at no point did Mr. Dolan, or any other supervisor, inform her that her performance was considered average until she filed this lawsuit. (Elba Aff., ECF No. 36-1, PageID 645.)

Her performance evaluations show that Mr. Dolan regularly encouraged her to develop talent within the organization. In her most recent evaluation, Mr. Dolan explained that Ms. Elba "produce[d] strong operational results," but had "weak people management." (*Id.* PageID 364, 46:19–25.) By weak people management, Mr. Dolan meant that the company charged RDOs with developing talent within the organization and training Market Managers to take on higher roles within the company. (*Id.* 47:02–48:20; *see also* ECF No. 31-18, PageID 495 ("Mina has a bright future at Circle K. She will excel to the next level as she begins to develop Director Level talent.").) But during her tenure as RDO, Ms. Elba has not elevated a single Market Manager to a director or higher-level role. (Dolan Dep., ECF No. 25, PageID 364, 48:10–20.)

Mr. Dolan highlighted the need to develop talent in several of her performance evaluations. In 2018, he encouraged Ms. Elba to "be more on purpose with her development of others," (ECF No. 31-14, PageID 481) and in 2019 he stressed that she "will be more effective when she has a culture of people development driven down to store level" (ECF No. 31-15, PageID 484).

Mr. Daggett and Mr. Morris, however, fostered talent within the organization and elevated employees to director or higher-level roles, says Mr. Dolan. (Dolan Dep., ECF No. 25, 82:08–14 (discussing Scott Morris); 79:11–21 (discussing Andrew Daggett).) Circle K asserts that this is why they received better performance evaluations, and corresponding salaries. (*Id.*)

## II.    PROCEDURAL BACKGROUND

Ms. Elba sued Circle K in the Franklin County Court of Common Pleas. (ECF No. 4.) She filed the Complaint on November 13, 2023, alleging that Circle K violated Ohio Revised Code § 4111.17 by paying her a wage less than those of male employees with a similar job. (*Id.* ¶¶ 31–34.) She also asserts that Circle K discriminated against her based on her sex in violation of Ohio Revised Code §§ 4112.02, 4112.052. (*Id.* ¶¶ 35–37.)

Circle K removed the case based on diversity jurisdiction. (ECF No. 1.) Ms. Elba is a citizen of Ohio and Mac's Convenience Stores, doing business as Circle K, is a single-member limited liability company organized under Delaware law with its principal place of business in Indiana. (ECF No. 1-4, ¶ 4.) The sole member of the limited liability company is Couch-Tard U.S. Inc., a Delaware corporation with a principal place of business in Arizona. (*Id.*) Mac's Convenience Stores is thus a citizen of Delaware and Arizona for the purposes of diversity jurisdiction. *See Delay v. Rosenthal Collins Grp., Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009) (explaining that limited liability companies, or LLCs, are citizens of every state where its members are citizens).

Circle K now moves for summary judgment on both of Ms. Elba's state-law claims. (ECF. No. 23.) It argues that her claims fail on procedural and substantive grounds. (*See id.*) Ms. Elba responds that she has raised genuine disputes of material fact, making summary judgment inappropriate. (ECF No. 36.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).

To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[S]ummary judgment will not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Moore v. Philip Morris Cos*., 8 F.3d 335, 340 (6th Cir. 1993) (finding a genuine issue exists if the nonmoving party shows "significant probative evidence" that "there is [more than] some metaphysical doubt as to the material facts."). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Moore*, 8 F.3d at 340.

The moving party—here, Circle K—bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp*., 477 U.S. at 323–24. The non-moving party—here, Ms. Elba—then must present sufficient evidence from which a jury could reasonably find for them. *See Anderson*, 477 U.S. at 249. The Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## ANALYSIS

Circle K asserts that Ms. Elba's wage discrimination and sex discrimination claims are barred by the applicable statute of limitations, the doctrine of laches, and fail on their merits. The Court addresses Circle K's procedural arguments before analyzing whether Ms. Elba presented evidence creating genuine issues of material fact to defeat summary judgment.

I.      **Circle K is not entitled to summary judgment on Ms. Elba's wage discrimination claim under Ohio law.**

Ohio's version of the Equal Pay Act prohibits an employer from discriminating in the payment of wages based on sex "for equal work" on jobs that require "equal skill, effort and responsibility, and [] are performed under similar conditions." Ohio Rev. Code § 4111.17(A). Actions arising under this statute must be initiated within one year of the date of the violation. Ohio Rev. Code § 4111.17(E). Circle K argues that Ms. Elba's wage discrimination claim is

8

untimely, barred by the doctrine of laches, and fails as a matter of law. (*See* ECF No. 23.) The Court addresses Circle K's affirmative defenses before turning to the merits of the claim.

### A. Ms. Elba's wage discrimination claim is limited by the statute of limitations to unequal pay she received after 2010.

Under Ohio law, wage discrimination claims must be brought within one year. Ohio Rev. Code § 4111.17(E). That said, each paycheck of unequal pay is a continuing violation. *See Greenleaf v. DTG Operations, Inc.,* No. 2:09-CV-192, 2011 U.S. Dist. LEXIS 24808, at *28 (S.D. Ohio Mar. 11, 2011) (Marbley, J.) (citing *Featzka v. Millcraft Paper Co.*, 405 N.E.2d 264, 267 (Ohio 1980)). If the plaintiff received at least one discriminatory paycheck within the limitations period, the claim is not time-barred. *Id.*

Ms. Elba filed this lawsuit in November 2023. (*See* ECF No. 4.) She argues that she has received unequal pay since she started with Circle K in 2004 as a Market Manager. (ECF No. 36, PageID 639–42.) She continued to receive unequal pay when she was promoted to Category Manager in 2010 and still receives unequal pay today, in her role as RDO. (*Id.*)

Circle K counters that her promotions severed the connection between any current, and any prior, alleged pay inequities. (ECF No. 23, PageID 147–50; *see also* ECF No. 37, PageID 650–51.) Even if she had been paid an unequal wage when she was Market Manager, or Category Manager, Circle K argues that any discriminatory pay ended when she left each role in 2010 and 2015, respectively. (*Id.*) In other words, Circle K asks the Court to cabin her claim to after she was promoted to RDO in 2015. (*Id.*)

Since Ms. Elba continues to receive a purportedly unequal paycheck in her role as RDO, her wage discrimination claim is timely. But the timeliness of her claim as it relates to her role as Market Manager and Category Manager presents a closer question.

For one, Ms. Elba did not respond to Circle K's statute of limitations defense in her Memorandum in Opposition. (*See* ECF No. 36.) The earliest evidence of unequal pay offered by Ms. Elba was from 2010, after she was promoted to Category Manager. (*Id.* PageID 639–40.) She argues that Circle K paid Steve Guzman and Lawrence Vertal more than it paid her for the same role. (*Id.*) The table below summarizes the pay differences between Ms. Elba and the comparator male Category Managers.

|      | Nirmin Elba | Lawrence Vertal | Steve Guzman |
|------|-------------|-----------------|--------------|
| 2010 | $62,799.88  | $77,400.96      | $86,041.54   |
| 2011 | $65,000.00  | $79,916.46      |              |
| 2012 | $67,275.00  | $82,513.86      |              |
| 2013 | $69,158.70  | $84,989.32      |              |
| 2014 | $71,060.60  | $87,114.04      |              |
| 2015 | $73,014.76  |                 |              |

(ECF No. 32-6, PageID 583 (Guzman), 587 (Vertal); ECF No. 31-2; PageID 423–24 (Elba).)

This evidence suggests that at least two male employees were paid higher wages for the same role starting in 2010. (*See id.*). She argues her unequal salary today is the product of pay disparities compounded. (ECF No. 36, PageID 639–42.) Since she continues to receive unequal paychecks in her role as RDO (*see supra*, Part I(B)), the Court cannot conclude as a matter of law that her equal pay claim related to her roles as Category Manager and RDO is untimely and barred by the statute of limitations.

Circle K's argument that her respective promotions severed the connection between her current and prior pay inequities is incongruent with the policy goals of the paycheck-based approach to wage discrimination claims. Pay inequities compound over time. That each paycheck constitutes a new violation also remedies the difficulties faced by plaintiffs in uncovering hidden pay information that may allow claims of unequal pay to go unchallenged. *See Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 616, 644–50 (2007) (Ginsburg, J., dissenting), *superseded by statute in part*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009); 42

U.S.C. §2000e-5(e)(3)(A).[3] Often by the time the discrimination is uncovered, the statute of limitations will have run. *Gandy v. Sullivan County*, 24 F.3d 861, 864 (6th Cir. 1994). An employer "should not be allowed to continue its illegal conduct because it has not been previously challenged." *Id.* at 865. Ms. Elba's promotions therefore did not start the statute of limitations. That she did not bring her claims until years after her promotions will not bar her wage discrimination claim.

That said, Ms. Elba does not offer any evidence of unequal pay from before 2010 when she was a Market Manager at Circle K. (*See* ECF No. 36.) Ms. Elba left the role of Market Manager when she was promoted to Category Manager in 2010. She has not received a paycheck in connection with that role for over a decade. Without evidence that she received unequal pay before 2010, the Court finds that Circle K is entitled to summary judgment on its statute of limitations defense and that Ms. Elba's wage discrimination claim, as it relates to her time as a Market Manager, is untimely. *See Thomas v. Ohio Civ. Rts. Comm'n*, No. 2:04-cv-0944, 2006 U.S. Dist. LEXIS 41027, at *31 (S.D. Ohio June 20, 2006) (Smith, J.) (finding the employer was entitled to summary judgment based on a statute of limitations defense because the plaintiff was terminated

---

[3] The majority opinion of the U.S. Supreme Court in *Ledbetter* held that a female employee's wage discrimination claim under Title VII was barred by the statute of limitations. *Ledbetter,* 550 U.S. at 644–50 (Ginsburg, J., dissenting), Justice Ginsburg dissented, highlighting the cumulative and concealed nature of pay discrimination to argue that the statute of limitations should reset with each paycheck, as it does under the Equal Pay Act and comparable state laws. *Id.* Her dissent was a catalyst for the Lilly Ledbetter Fair Pay Act of 2009, which codified the rule that each discriminatory paycheck resets the statute of limitations for Title VII claims of wage discrimination. *See* 42 U.S.C. §2000e-5(e)(3)(A) ("an unlawful employment practice occurs, with respect to discrimination in compensation, . . . when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory decision or other practice, including each time wages, benefits, or other compensation is paid")

more than two years before filing suit). She may however proceed on her wage discrimination for

any unequal pay she received after she was promoted to Category Manager in 2010.

The Motion for Summary Judgment is thus **GRANTED IN PART** and **DENIED IN**

**PART** as to Circle K's statute of limitations defense.

### B. Circle K's laches defense does not bar Ms. Elba's wage discrimination claim.

Circle K also asserts a laches defense. "Laches is the negligent and unintentional failure to

protect one's rights." *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 584

(6th Cir. 2015) (citing *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir.

2002)). "To succeed in a laches defense under Ohio law, the defendant must establish the following

elements: (1) the plaintiff's unreasonable delay or lapse of time in asserting a right, (2) without

excuse for such delay, (3) with knowledge—actual or constructive—of the injury or wrong,

(4) that caused prejudice to the defendant." *Bentley v. Cywes*, No. 2:22-cv-4189, 2024 U.S. Dist.

LEXIS 176032, at \*10 (S.D. Ohio Sep. 27, 2024) (citing *Martin Marietta Magnesia Specialties,*

*L.L.C. v. Pub. Util. Comm.*, 954 N.E.2d 104, 114 (Ohio 2011)).

Whether Ms. Elba was diligent in pursuing her wage discrimination claim depends on when

she learned that she was paid less than her male counterparts for the same work. Circle K argues

that Ms. Elba unreasonably delayed asserting her claims because "she knew full well what she was

being paid and stayed silent about her concerns." (ECF No. 23, PageID 148.) To support its

argument, Circle K cites Ms. Elba's deposition testimony where she stated she raised no concerns

about her discriminatory pay. (*Id.* (citing ECF No. 24, 24:10–25:2).)

Ms. Elba explains in her deposition that she first became suspicious that she was paid less

than her male counterparts after she assumed the role of Category Manager. (Elba Dep., ECF No.

24, PageID 279, 25:02–08.) Other Category Managers "hinted" about their salaries in discussions

with Ms. Elba, but she "did not see anybody's paycheck," so she did not know for certain whether

12

her pay was less than her male colleagues. (*Id.* PageID 281, 32:01–18, 36:15–19.) That remained true even when she became the RDO for the Great Lakes business unit. (*Id.*)

For the Court to award summary judgment to Circle K on its laches defense, the Court must make a credibility determination about Ms. Elba's deposition testimony. To do so would be inappropriate on a motion for summary judgment. *See Anderson*, 477 U.S. at 255 (explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 344 (6th Cir. 2018) (affirming the district court's conclusion that disputes of material fact existed related to the issue of laches that precluded summary judgment). Because disputes of material fact exist about when Ms. Elba learned she was paid less than her male colleagues, Circle K's laches defense fails.

The Motion for Summary Judgment is thus **DENIED** as to Circle K's laches defense.

### C. Genuine issues of material fact exist as to Ms. Elba's wage discrimination claim under Ohio law.

Circle K next argues that it is entitled to summary judgment on the merits of Ms. Elba's wage discrimination claim. (ECF No. 23, PageID 151–55.)

Under Ohio Rev. Code § 4111.17 employers are prohibited from paying employees less because of their sex for "equal work on jobs the performance of which requires equal skill, efforts, responsibility, and which are performed under similar conditions." Ohio Rev. Code § 4111.17(A). Section 4111.17 contains similar provisions as the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1) ("EPA"). Ohio courts look to judicial interpretations of the EPA when interpreting Ohio Rev. Code § 4111.17. *Woods v. FacilitySource, LLC*, 640 F. App'x 478, 483 (6th Cir. 2016) ("Claims of wage discrimination, whether brought pursuant to Title VII or Ohio Revised Code § 4111.17, are analyzed as if the claims were brought under the federal Equal Pay Act."). Therefore, the Court

will consider caselaw interpreting the EPA, when analyzing Ms. Elba's wage discrimination claim.

To prove a wage discrimination claim, Ms. Elba must first make a prima facie showing that her employer paid different wages to an employee of the opposite sex for substantially equal work. *Equal Employment Opportunity Commission v. Romeo Cmty. Schools*, 976 F.2d 985, 987 (6th Cir. 1992) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Equal work does not necessarily mean identical work, but does require a "substantial equality of skill, effort, responsibility, and working conditions." *Buntin v. Breathitt County Bd. of Educ*., 134 F.3d 796, 799 (6th Cir. 1998) (citation omitted). Since Ms. Elba is the plaintiff, she "bears the burden of establishing equality of the work performed and the skill, effort[,] and responsibility required to perform it." *Harrison-Pepper v. Miami Univ.*, 246 F. Supp. 2d 854, 860 (S.D. Ohio 2003) (Beckwith, J.).

If she can establish a prima facie case, the burden shifts to Circle K to show by a preponderance of the evidence that the wage differential is justified. *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021). The EPA "authorize[s] an employer to differentiate in pay between sexes" in four circumstances. *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029 (6th Cir. 1983) (citation omitted). Those circumstances, known as affirmative defenses, include if the differential was made under: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *Id.; see also* 29 U.S.C. § 206(d)(1); Ohio Rev. Code § 4111.17(B). An employer can only invoke the fourth affirmative defense if the factor other than sex is for a legitimate business reason. *Beck-Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006).

The defendant bears the burden of production and persuasion on its affirmative defense, and the burden is a heavy one. *Id.* (citing *Brennan v. Owensboro-Daviess Cty. Hosp.*, 523 F.2d

1013, 1031 (6th Cir. 1975)). In summarizing the parties' burdens on the affirmative defenses, the Sixth Circuit explains that:

> To survive the defendant's motion for judgment as a matter of law, the [plaintiff] need not set forth evidence from which a jury could infer that the employer's proffered reason for the wage differential is pretextual. As the party who bears the burden of persuasion, the defendant . . . must demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex. Thus, the district court's granting of the [defendant's] motion for judgment as a matter of law was proper only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary.

*Buntin*, 134 F.3d at 800. Unless sex "provides no part of the basis for the wage differential," summary judgment is not appropriate. *Beck-Wilson*, 441 F.3d at 365.

Only if the defendant proves its affirmative defense, must the plaintiff produce "evidence creating a triable issue of fact as to whether the defendant's proffered explanation was pretextual." *Briggs*, 11 F.4th at 508 (citing *Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 753 (6th Cir. 2016)).

### i. Ms. Elba satisfied her prima facie burden.

To establish her prima facie case, Ms. Elba must show that Circle K paid different wages to male employees despite the male employees performing substantially equal work. *See Harrison-Pepper*, 246 F. Supp. 2d at 860. Ms. Elba offers several male comparators who she argues are employed are paid higher salaries: Scott Morris, Andrew Daggett, James Hansen, Scott Guzman, and Derek Cahill. (ECF No. 36, PageID 633–35.) Circle K does not dispute that these male employees were paid higher salaries but argues that they were not "equal in all material respects" to be valid comparators. (ECF No. 37, PageID 654–58.)

Whether an employee offers a valid comparison depends "not on job titles or classifications but on actual job requirements and performance." *Conti v. Universal Enters.*, 50 F. App'x 690, 696 (6th Cir. 2002). To be a valid comparator, the male employees must perform equal work, with

equal skill, responsibility, and working conditions. *See Buntin*, 134 F.3d at 799. Courts are instructed to make "an overall comparison of the work, not its individual segments." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). "Precise equivalence is not required." *Conti,* 50 F. App'x at 696.

Scott Morris, Andrew Daggett, Derek Cahill, and Scott Guzman are RDOs in the Great Lakes business unit—the same business unit as Ms. Elba. But Mr. Guzman started his career with the company in California, where his pay was initially set, and then transferred to the Great Lakes business unit in 2007. (Macuch Decl., ECF No. 37-1, ¶ 4.) Circle K argues that because Mr. Guzman's pay was initially set by a different business unit, he does not offer a valid comparison. (ECF No. 37, PageID 657–58.) Yet in the same paragraph Circle K acknowledges that Mr. Guzman has been in the same business unit as Ms. Elba for almost two decades and that his pay has "increased according to individual merit and performance the same way [Ms.] Elba's did." (*Id.*) "[N]o authority supports the concept that an employee's prior salary . . . justif[ies] a wage differential." *Briggs*, 11 F.4th at 510. "Such a rule would simply perpetuate existing sex-based pay disparities and undercut the purposes of the [EPA]—to require that those doing the same work receive the same pay." *Id.* Mr. Guzman offers a valid comparison.

Circle K also argues that Mr. Daggett and Mr. Morris do not offer a proper comparison because they had stronger performance evaluations than Ms. Elba. (ECF No. 37, PageID 656–58.) Mr. Daggett and Mr. Morris's performance is better addressed under the second step of this analysis—whether Circle K had a legitimate business reason for paying the male RDOs differently. *See Beck-Wilson*, 441 F.3d at 363 ("Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's prima facie case."). Circle K also does not address whether Mr. Cahill offers a valid comparison, despite Ms. Elba's arguments

that he received a higher salary for the same position. Since Circle K does not dispute that Mr. Daggett, Mr. Morris, and Mr. Cahill held the same position with similar job responsibilities as Ms. Elba, they offer valid comparisons.

The Court however agrees with Circle K that James Hansen does not offer a relevant comparison and cannot be used to meet Ms. Elba's prima facie burden. Mr. Hansen was employed by a different business unit. (ECF No. 32-6, PageID 592–93 (showing that Mr. Hansen received a higher salary).) Comparators who work in "different establishments" are not substantially equal. *Sharp v. Ephraim McDowell Reg'l Med. Ctr., Inc.*, Civil Action No. 5:07-362-JMH, 2010 U.S. Dist. LEXIS 16616, at *12 (E.D. Ky. Feb. 24, 2010) (quoting 29 C.F.R. § 1620.9(a) (defining "establishment")). Jason Macuch, the Human Resources Director for the Great Lakes business unit explained that Mr. Hansen worked in the Midwest business unit and a different leadership team hired him and set his salary. (Macuch Decl., ECF No. 37-1, ¶ 3.) Each business unit sets its own wages and the business units are not governed by a central body. (*Id.*); *see also Sharp*, 2010 U.S. Dist. LEXIS 16616, at *12 (explaining when different establishments are treated as a single establishment). Since Mr. Hansen has never worked in the Great Lakes business unit, he does not offer a relevant comparison.

Scott Morris, Andrew Daggett, Steve Guzman, and Derek Cahill all hold the same position, in the same business unit, and receive different—and higher—salaries. *See supra*, Part I(B). Ms. Elba has made a prima facie case and the burden shifts to Circle K to justify this wage differential.

### ii.    A genuine issue of material fact exists as to whether job performance justified the pay differential.

Given that Ms. Elba met her prima facie burden, Circle K bears both the burden of persuasion and production on its affirmative defenses. *Beck-Wilson*, 441 F.3d at 365 (citation omitted). Circle K relies on the fourth affirmative defense arguing that a factor "other than sex"

explains the reason for the wage disparity. (ECF No. 37, PageID 656 ("[T]he record clearly establishes a factor other than sex that is a legitimate and non-discriminatory[.]").) It argues that it had a legitimate business reason for paying its male RDOs differently. (ECF No. 23, PageID 153–55.) Employee pay is set by looking at the pay range for each job and the employee's job performance, says Circle K. (*Id.*)

To meet its burden under the fourth affirmative defense, the Sixth Circuit has held that "at a minimum" a factor other than sex "does not include literally any other factor" but the wage differential must be "adopted for a legitimate business reason." *Beck-Wilson*, 441 F.3d at 365 (citing *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988)). Unless "sex provides no part of the basis for the wage differential, the requirements [of the defense] are not met." *Brennan*, 523 F.2d at 1031; *see also Buntin*, 134 F.3d at 800 (awarding summary judgment to an employer is proper "only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary").

Circle K has failed to meet the heavy burden of persuasion and production to show that sex played no part in the wage differential between Ms. Elba and her male colleagues. *See id.* Circle K argues it sets employee pay by looking at the pay range for the specific job and the employee's job performance. (ECF No. 23, PageID 153.) The pay range for all RDOs in the Great Lakes business unit is between $80,000 and $160,000. (*See* Dolan Dep., ECF No. 25, PageID 373, 82:03–09; 92:10–93:01.) Where an employee's salary falls within that range depends on his or her job performance. (*Id.* 93:02–10.) The male RDOs who were paid more, performed better than Ms. Elba, says Circle K. (*Id.* PageID 154–55.)

When Ms. Elba was promoted as an RDO in 2015, her salary was $83,000. (Elba Dep., ECF No. 24, 35:01–04, 36:02–09.) She received an annual performance evaluation and a

corresponding merit pay increase each year. *See supra,* Part I(B) (table of her annual salary); (ECF No. 31-2, PageID 423–24; ECF Nos. 31-2–31-19 (performance evaluations).) By 2023, Circle K paid Ms. Elba a salary of $129,083.63. (ECF No. 31-2, PageID 423–24.) Circle K contends, and Ms. Elba does not dispute, that she was one of the highest paid RDOs in her business unit. (*See* ECF No. 23, PageID 142.)

That said, Mr. Dolan also testified that Ms. Elba was not the top performing RDO and that she had room for improvement. (Dolan Dep., ECF No. 25, PageID 364, 46:01–48:20.) Although Ms. Elba "produce[d] strong operational results," Mr. Dolan explained that she had "weak people management." (*Id.* 46:19–25.) He described her performance as "average" to "slightly above average." (*Id.* PageID 375, 92:08–14.) The reason she did not receive a higher evaluation and corresponding salary, Mr. Dolan explained was because she failed to elevate talent within the organization. (*Id.* PageID 364, 47:02–48:20.) The company charged RDOs with developing talent and training Market Managers to take on higher roles within the company. (*Id.*) But Ms. Elba has not elevated a Market Manager to a director or higher-level role within the company. (*Id.*)

In comparison, Mr. Morris and Mr. Daggett, who were paid more than Ms. Elba, excelled at developing talent and produced multiple people for next level promotion, says Mr. Dolan. (*Id.* PageID 375, 91:09–92:14.) The salary differential reflects a difference in performance, not sex, says Mr. Dolan. (*Id.*) Mr. Dolan expounded that Mr. Morris is "one of the best in the business" (*id.* 91:15–16), and Mr. Daggett produced "top notch operational results" (*id.* 92:05–06).

The Court is without the male RDOs performance evaluations and thus cannot compare the feedback they received to the feedback Ms. Elba received in her annual evaluations. The Sixth Circuit instructs district courts to view an employer's subjective evaluation—at least when contested by the employee—with scrutiny because such subject evaluations "have a greater

susceptibility for being a smokescreen." *George v. Youngstown State Univ.*, 966 F.3d 446, 467 (6th Cir. 2020) (collecting cases). Ms. Elba's performance evaluations, and purported failure to develop next level talent, *could* explain the salary disparity between her and her male colleagues. *See Briggs*, 11 F.4th at 511. But without performance evaluations to compare to Ms. Elba's, the Court cannot find that there is no genuine issue that Circle K paid the male RDOs higher salaries based only on their performance, not sex.

The record also supports that Ms. Elba's performance improved over the past several years. In 2019, she received a 3.33 "calculated rating" and her performance was described as "good." (ECF No. 31-15, PageID 483.) Although Circle K no longer uses the same calculated rating system, the feedback included in her annual evaluations became increasingly positive. Mr. Dolan described her as "a very strong manager of her team" in 2022. (ECF No. 31-17, PageID 489.) He praised her for "driv[ing] engagement by using existing processes to maximize outcomes" and said, "she should be most proud of how she accomplished a massive improvement in engagement across the board and in her direct reports." (*Id.*)

Her evaluations also show that Mr. Dolan regularly encouraged her to develop talent within the organization. (*E.g.*, ECF Nos. 31-14, PageID 481 ("Mina needs to be more on purpose with her development of others."); 31-15, PageID 484 ("Mina will be more effective when she has a culture of people development driven down to store level.").) But this feedback could be more reflective of what Mr. Dolan perceived as necessary for her to move up in the company, not the reason for her salary. When Mr. Dolan pushed Ms. Elba in her 2022 performance evaluation "to produce an RDO or support team candidate," he did so in the section of the evaluation considering her future potential within the company. (ECF No. 31-17, PageID 490.) He urged her to develop talent and to "succession plan[]" so that she could move "into the next level of management," not

20

so that she could receive a higher salary in her current role. (*Id.*) Similarly, in 2023, Mr. Dolan stated that "Mina has a bright future at Circle K. She will excel to the next level as she begins to develop Director Level talent." (ECF No. 31-18, PageID 495.)

Circle K asserts that "there is simply no evidence [Ms. Elba's] sex ever has played a role in how her compensation has been set or that the Company's legitimate and non-discriminatory explanation is not untrue." (ECF No. 23, PageID 155.) But Circle K misstates the standard by which the Court is to review the evidence and suggests that it is Ms. Elba's burden to produce evidence supporting her claim. Not so. It is the defendant's burden to produce and persuade the Court that sex played no part in the wage differential. Ms. Elba bears the burden of producing evidence of pretext only if Circle K meets its burden on its affirmative defense. *Buntin*, 134 F.3d at 799 n.7 (explaining the plaintiff must produce evidence of pretext "solely where a reasonable jury viewing the defendant's evidence could find only for the defendant."). Because Circle K has not carried its burden, Ms. Elba need not "set forth evidence from which a jury could infer [Circle K] proffered reason for the wage differential is pretextual." *Beck-Wilson*, 441 F.3d at 365.

Circle K has not established its defense "so clearly that no rational jury could have found to the contrary." *Id.* (internal quotations omitted). When viewing the evidence in a light most favorable to Ms. Elba, the factual issues surrounding Circle K's affirmative defense are best resolved by a jury, not this Court. Therefore, Circle K is not entitled to summary judgment on Ms. Elba's wage discrimination claim under Ohio Rev. Code § 4111.17.

To sum, Ms. Elba's wage discrimination claim is limited to after her promotion to Category Manager in 2010. Because she introduced sufficient factual allegations to show she was paid less than male employees in the same role, she may proceed on her wage discrimination claim as it relates to her roles as Category Manager and Regional Director of Operations—*i.e.*, 2010 to

present. Accordingly, the Motion for Summary Judgment on Ms. Elba's wage discrimination claim

is **GRANTED IN PART** and **DENIED IN PART**.

## II. Circle K is not entitled to summary judgment on Ms. Elba's sex discrimination claim under Ohio law.

Ms. Elba's second cause of action alleges that Circle K discriminated against her based on

her sex in violation of Ohio Revised Code §§ 4112.02, 4112.052. (ECF No. 4, ¶¶ 35–37.) Circle

K moves for summary judgment arguing that Ms. Elba failed to exhaust her administrative

remedies and that her sex discrimination claim is barred by a two-year statute of limitations. (ECF

No. 23, PageID 146–51.) If her claim is not barred by the statute of limitations or her failure to

exhaust her administrative remedies, Circle K argues that she cannot prevail on the merits and thus

it is entitled to judgment as a matter of law. (*Id.* PageID 155–56.)

### A. Ms. Elba's claims that accrued before 2021 are not barred by her failure to exhaust her administrative remedies.

Since 2021, Ohio law has required a plaintiff to exhaust their administrative remedies

before suing for sex discrimination. *See* Ohio Rev. Code § 4112.052 (effective April 15, 2021). A

plaintiff alleging a violation of § 4112.02 must first file a charge of discrimination with the Ohio

Civil Rights Commission ("OCRC"). Ohio Rev. Code § 4112.052(B)(1)(a). If the OCRC issues a

notice of right to sue, or fails to do so within 45 days, the plaintiff may sue. *Id.* § 4112.052(B)(1)(b).

The burden of proving exhaustion is on the plaintiff. *Dalton v. Franklin Cty. Sheriff's Off.*, No.

2:15-cv-816, 2015 U.S. Dist. LEXIS 153280, at *12 (S.D. Ohio Nov. 12, 2015) (Smith, J.); *see*

*also Dickerson v. Assocs. Home Equity*, 13 F. App'x 323, 324 (6th Cir. 2001) (explaining that a

plaintiff meets their burden by attaching the right-to-sue letter to the complaint).

But before 2021, plaintiffs were not required to exhaust their administrative remedies

before pursuing sex discrimination claims. *Duncan v. Lourdes Univ.*, No. 23-3833, 2025 U.S. App.

LEXIS 3509, at *6 (6th Cir. Feb. 13, 2025) (explaining that the law changed effective April 2021);

*see also Hensley v. Township*, No. 1:21-cv-373, 2022 U.S. Dist. LEXIS 180370, at *20 (S.D. Ohio Sep. 30, 2022) (Barrett, J.) (explaining that the amendments to the Employment Law Uniformity Act ("ELUA") now require administrative exhaustion). And this Court has held that the new law "makes no mention of retroactivity" and therefore does not apply to claims arising before the effective date of April 2021. *Erwin v. Honda N. Am., Inc.*, No. 2:20-cv-4350, 2022 U.S. Dist. LEXIS 155734, at *27 n.7 (S.D. Ohio Aug. 29, 2022) (Marbley, J.). In other words, plaintiffs whose claims accrued before the law went into effect in April 2021 are not required to exhaust their administrative remedies before suing.

Ms. Elba filed her lawsuit in November 2023, two years after the law changed and required plaintiffs to exhaust their administrative remedies. (*See* ECF No. 4.) Ms. Elba does not include in her Complaint any allegations that she filed a charge of discrimination with the OCRC before filing this lawsuit or attach a right-to-sue letter. (*See* ECF No. 4.) Even after Circle K pointed this out (ECF No. 23, PageID 150–51), Ms. Elba did not argue that she filed a charge of discrimination or received notice of right to sue from the OCRC (*see* ECF No. 36).

But as the Court discussed when addressing the statute of limitations, Ms. Elba has put forth evidence that she has received an unequal wage since 2010. *See supra,* Part I(A). Her claims first accrued before 2021 and are therefore not barred by her failure to exhaust her administrative remedies. The unequal pay continued through the filing of the Complaint in November 2023. (ECF No. 4.) To the extent her sex discrimination claim is based on discrimination she suffered *after* April 2021, she was required to exhaust her administrative remedies but did not. Her claim for discrimination after 2021 is barred by Ohio Revised Code § 4112.052(B)(1)(a).

The Motion for Summary Judgment is thus **GRANTED IN PART** and **DENIED IN PART** on Circle K's administrative exhaustion defense.

### B. The statute of limitations limits but does not preclude Ms. Elba's sex discrimination claim.

Circle K next argues that the applicable two-year statute of limitations for claims of sex discrimination bars Ms. Elba's claim. (ECF No. 23, PageID 146–51.) Ms. Elba does not respond to Circle K's statute of limitations defense. (*See* ECF No. 36.)

Ohio Revised Code § 4112.99 provides that violations of Chapter 4112 are subject to civil actions for damages. Ohio Rev. Code § 4112.99(A). Section 4112.99 is a remedial statute and until April 2021, it was subject to a six-year statute of limitations. *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 638 N.E.2d 991 (Ohio 1994). The ELUA, however, amended Ohio Revised Code Chapter 4112 and codified a two-year statute of limitations for employment discrimination claims. *Burch v. Ohio Farmers Ins. Co.*, 5th Dist., 211 N.E.3d 202, 208 (Ohio Ct. App. 2023).

As discussed, the ELUA has no retroactive application. *Erwin*, 2022 U.S. Dist. LEXIS 155734, at *27 n.7. Ms. Elba argues she has been subject to workplace discrimination in the form of unequal pay since at least 2010 when she was promoted to Category Manager. *See supra,* Part I(A). The alleged discrimination continued through 2023, when she filed this lawsuit. (ECF No. 4.) Since Ms. Elba's claims accrued before April 2021, before the ELUA's two-year statute of limitations took effect, her claims must be considered under the six-year statute of limitations.

The Complaint was filed in November 2023. (ECF No. 4.) To the extent that Ms. Elba's sex discrimination claim alleges discrimination from before November 2017, her claims are barred by the statute of limitations. Ms. Elba may proceed on her sex discrimination claim for allegations of discrimination that occurred within the six-year statute of limitations.

The Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** on Circle K's statute of limitations defense to the sex discrimination claim. To sum, her sex

24

discrimination claim is limited to her allegations of discrimination between 2017 and 2021 based on the statute of limitations and her failure to exhaust her administrative remedies.

### C. Genuine issues of material fact exist as to Ms. Elba's sex discrimination claim under Ohio law.

The Court now turns to the merits of Ms. Elba's claim for sex discrimination. Circle K argues that Ms. Elba cannot establish a prima facie case of sex discrimination because she offers no evidence of similarly situated male employees who were treated more favorably. (ECF No. 23, PageID 156.) Even if she met her prima facie burden, Circle K argues that her claim still fails because it had a legitimate business reason for paying her less than her male colleagues. (*Id.*)

Under Ohio law, it is an unlawful employment practice for an employer to discriminate against any person "with respect to hir[ing] tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," because of the person's sex. *See* Ohio Rev. Code § 4112.02(A). "Because the elements and legal standards for establishing unlawful sex discrimination are the same under Ohio Rev[ised] Code § 4112.02 and under 42 U.S.C. § 2000e-2," the Court will analyze Ms. Elba's state-law claim by applying federal case law interpreting Title VII. *Walenciej v. E. Ohio Corr. Ctr.*, No. 24-3571, 2025 U.S. App. LEXIS 5896, at *14 (6th Cir. Mar. 12, 2025) (citation omitted); *see also Jackson v. Int'l Fiber Corp.*, 395 F. App'x 275, 280 (6th Cir. 2010) (citation omitted).

Generally, when a claim for wage discrimination under the Equal Pay Act and a sex discrimination claim under Title VII "arise out of the same set of underlying facts, both stating a charge of wage discrimination, the standards of liability under the two statutes are sufficiently similar that the disposition with respect to the two claims should be the same." *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 494 (6th Cir. 2014) (citing *Clark v. Johnson & Higgins*, No. 97-4233, 1999 U.S. App. LEXIS 11350, at *8 (6th Cir. May 28, 1999)). "[A] finding of liability

25

under the Equal Pay Act requires a similar finding of liability under Title VII where both claims present the same conduct and evidence." *Buntin*, 134 F.3d at 801 (citing *Korte v. Diemer*, 909 F.2d 954, 959 (6th Cir. 1990)).

This case is not an exception to that general principle. The Court finds that the Motion fails for the same reasons that the Motion failed on Ms. Elba's wage discrimination claim. "[W]here the plaintiff defeats the defendant's motion for judgment as a matter of law with respect to her EPA claim by raising a genuine issue as to the defendants' reason for the differential wage, she also defeats their motion for judgment as a matter of law brought against her parallel [sex discrimination] claim." *Buntin*, 134 F.3d at 801.

Circle K contends that Ms. Elba cannot satisfy the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (173). It argues that Ms. Elba fails to put forth similarly situated male employees who were treated more favorably, and thus cannot satisfy her prima facie burden. (ECF No. 23, PageID 156 ("She cannot show anyone with the same performance . . . was paid more.").) But the Court found above that Scott Morris, Andrew Daggett, Derek Cahill, and Scott Guzman were male comparators who were paid more than Ms. Elba. *See supra*, Part I(C)(i). While job performance may justify this disparity, the Court found that genuine issues of material fact existed as to whether the male RDOs performed better than Ms. Elba to support Circle K's purported legitimate reason for the disparity. *See supra*, Part I(C)(ii). That reasoning applies to Ms. Elba's sex discrimination claim as well. The Court thus finds that Ms. Elba has put forth sufficient evidence to defeat the Motion for Summary Judgment.

The Motion for Summary Judgment (ECF No. 23) is **DENIED** as to the sex discrimination claim.

* * *

To sum, Ms. Elba raised genuine issues of material fact on her parallel wage discrimination and sex discrimination claims. But her claims are both limited by the statute of limitations and by her failure to exhaust her administrative remedies before filing this lawsuit. Ms. Elba's claim for wage discrimination as Market Manager (2004 to 2010) is barred by the statute of limitations because she did not introduce evidence that she was paid less than her male colleagues before she was promoted to Category Manager in 2010. She may proceed on her wage discrimination claim as it relates to her roles as Category Manager and RDO—*i.e.*, 2010 to present.

A six-year statute of limitations applies to her sex discrimination claim because her claims first accrued before 2021. She may proceed on her sex discrimination claim dating back six years from the day she filed her Complaint—*i.e.*, November 2017. But because she failed to exhaust her administrative remedies, her sex discrimination claim is limited to before 2021 when Ohio law first required administrative exhaustion. Her sex discrimination claim is limited to allegations of discrimination that she endured between 2017 and 2021.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Motion for Summary Judgment (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART**.

This case remains open.

**IT IS SO ORDERED.**

**9/15/2025**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**